HENRY HAMMOND vs. NATHAN AND HENRIETTA HAM-
MOND.—*June*, 1837.

H, by his will dated in 1828, devised and bequeathed to his wife, one-third
part of his real and personal estate, and to his two sons, *Henry* and *Nathan*,
in fee simple, all his real property in the city of *Annapolis*. To another
son, and his heirs for ever, he gave his plantation in *Anne Arundel* county;
and all the rest and residue of his estate, both real and personal, after his
wife's third should be taken out, he devised and bequeathed to his three
sons, share and share alike. *Held*, that under this will, the wife was enti-
tled to that share of her husband's estate, which the law gave her, and no
more; that is, one-third of the real for life, and one-third of the personalty
absolutely.

The word "estate" in a devise, will be *descriptive* of the subject of pro-
perty, or the *quantum* of interest, according to the context, and will pass a
fee, when the intention of the testator does not restrict it, to import a
description, rather than an interest.

Since the act of 1825, *ch.* 119, a general devise in which words of limitation,
or perpetuity are omitted, will pass the whole interest of the testator, upon
the assumption that he so intended; that assumed intention, however,
being *subject to be controlled, by evidence of a contrary intention,* indi-
cated by a devise over, by words of limitation, or otherwise.

APPEAL from *Chancery.*

On the 13th November, 1834, the appellees filed a bill,
charging that *Henry Hammond*, deceased, the father of *Na-
than*, and husband of *Henrietta*, by his last will and testa-
ment, bearing date the 26th of February, 1828, made the
following devises:

"I devise and bequeath to my dear wife, *Henrietta Ham-
mond*, one-third part of my real and personal estate. I give
and devise to my sons, *Henry Hammond*, and *Nathan Ham-
mond*, in fee simple, all my real property in the city of
*Annapolis.*"

"I give and bequeath to my son, *John Thomas Hammond*,
my plantation in *Anne Arundel* county, called, &c. to him
and his heirs for ever."

"I devise and bequeath all the rest and residue of my
estate, both real and personal, after my wife's thirds are
taken out, to be equally divided amongst my three sons,
*Henry*, *Nathan* and *John Thomas Hammond*, share and share
alike, and departed this life, leaving the said will in force.

That *Henry Hammond* had conveyed his interest, to *Robert Welsh*, of *Ben.;* that the house and lot in the city of *Annapolis* not being capable of division amongst the parties entitled; prayer for a sale of that, and distribution of the proceeds amongst those entitled, according to the will.

The defendants consented to a sale, which was made by a trustee of the court.

Upon a reference to the auditor, the proceeds of the *Annapolis* property were distributed equally, and absolutely between *Henry, Nathan* and *Henrietta Hammond.*

*Henry Hammond,* the appellant, excepted to the account.

1. Because it appropriates to *Henrietta,* one-third of the net proceeds of sale, whereas according to the true construction of the will of her husband, she was only entitled to the value of her life estate, in one-third of the estate, or its proceeds.

2. By the true construction of the will, and the act of 1825, *ch.* 119, the said *Henrietta,* was only entitled to a dower interest in the estate sold, and is now entitled to receive in money, the value of such dower, according to the rules of the court of Chancery.

His honour the chancellor (*Bland,*) on the 30th December, 1835, overruled the exceptions, and ratified the account.

The cause came up on the appeal of *Henry Hammond,* and was argued before STEPHEN, ARCHER, DORSEY, and CHAMBERS, Judges.

PINKNEY, for the appellant, in support of his exceptions contended:

That where a testator devised all his estate, to A. the interest of the testator passed: but where the word estate was intended to describe the *corpus,* and not the interest, the devisee only took a life estate. *Ram. on Wills,* 30. 8 *Law Lib.* 1 *Ves. Sr.* 226. *Cowper,* 306. 2 *Term. Rep.* 659. 7 *Ves.* 541, 544. 2 *Pr. Wms.* 336. The intent of the testator, was to give his wife a life estate, in one-third of

his real property, and he used the term in opposition to its technical meaning. *Cases Tem. Talb.* 157. If *Mrs. Hammond* took an estate in fee simple, it was impossible to reconcile it with the other clauses in the will. The first clause upon that hypothesis, is not reconcilable with the devise to her sons, nor to *John T. Hammond.*

The residuary clause was to operate on something, and if the first devise was universal, as its language imports, there was then nothing for the residue to operate on.

Every word in a will must have effect, if capable, without violation of the testator's intention. 7 *Bac. Abr.* 341.

If parts of a will are inconsistent, the subsequent words must prevail.

The act of 1825, *ch.* 119, does not give *Mrs. Hammond* an estate in fee, as contended for. That act was intended to refer to devises of land *eo nomine*, and the devise to the sons is a limitation over of the estate, devised to the wife and within the savings of that act. 4 *Boss and Pul. N. R.* 220.

RANDALL, for the appellee.

The only point at issue, is whether the widow has an estate for life, or in fee. The words of her devise give her a fee in one-third of the real estate. The rules of decision are collected in 2 *Prest. on Est.* 145; and it is admitted that the word estate, is susceptible of application, either to the *quantum* of interest, or description of property, according to the context. 8 *Law Lib. Ram. on Wills*, 119. 4 *Kent*, 535. 6 *Har. and John.* 228. The devise here applies the word estate, to both kinds of property—no words in *juxta* position control its meaning, nor words of locality, which now are not held to be words of limitation. The current of modern authority, is in favour of extending the word estate, and thus carrying out the intention of the testator.

The case cited in *Pr. Wms.* was decided in 1725—was before the king in council—not argued by lawyers, and is not authority.

It turned on a question of intention, and not on the

meaning of the word estate. That term when used without restriction carries the whole estate, and here it carries a fee, unless the intent be against it.

The first, last, and principal object of the testator's bounty, was his wife. In cases of doubt the principal intent, and primary object of the testator's bounty, is much regarded.

The widow under the will is a purchaser for a valuable consideration, and is to be protected accordingly. 4 *Har. and John.* 480. And she does not contribute in making up deficiences. 1 *Dess.* 471. 3 *Ib.* 49.

The will is to be construed, without reference to the *quantum* of *Henry Hammond's* estate. If the special devises be all the testator has, then if the devisees have a fee as contended for—the negroes being all manumitted, there is no fund for the widow's part. 6 *Binney,* 94. 4 *Maul and Sel.* 369.

The absence of restrictive words, in the case of a devise to a widow, argues more strongly as to the extent of her estate than that of other devisees.

In this will, if the first section only creates a life estate, then the residuary clause gives the wife an absolute estate in that before given for life, and thus disposes of the whole estate.

The meaning of the word estate is illustrated by the case, 8 *Term Rep.* 64, and by *Ram. on Wills,* 146. And if that word does not give an estate in fee, the act of 1825, *ch.* 119, applies to the devise and enlarges it.

ALEXANDER, for appellee, further contended:

The devise to the wife, under the act of 1825, will give her a fee, unless a clear intent in the testator to the contrary appears.

There is no devise over of this property, and the devise to the two sons, can as little be held to be a devise to the wife *for life,* as in fee—still the life estate is not questioned.

The only question is, whether the intent otherwise appears than by the devise over, or by limitations.

A devise of a man's estate, is not more ample than of his real and personal estate. The testator intended she should have the same extent in both, the real and personal estate. This is the common sense rule. This is a devise of one-third part of his real and personal estate, and the court cannot construe it to mean one-third part of one, absolutely, and one-third part of the other for life. Estate has a different meaning from property. There are no words of perpetuity in the last clause, and if that circumstance diminishes the estate of the wife in the first clause, so may it produce the same effect on the second and third devise. 8 *Durn. and E.* 50. 3 *Atk.* 486.

N. BREWER, JR. in reply.

The general rule is not disputed; generally the word estate will carry a fee. The exception is, when the word is restrained by the context.

There is no such case as a devise of one-third of an estate, or any numerical portion of an estate, which carries a fee in real property. It is different from a devise of the estate. Estate in this case is equivalent to one-third of the land. The testator meant to give his wife that portion of his estate which the law gives her. His intent is to prevail, whether the will is construed under the act of 1825, or at common law.

The last clause, containing the words, "after my wife's thirds are taken out," is in some measure technical, and this exception in the last clause, illustrates what he meant in the first.

A will must be construed so as to be consistent with itself. 6 *Ves.* 102. 5 *Ib.* 249. The effect of the construction on the other side is, to carve an estate out of the sons' property, wholly inconsistent with the will.

CHAMBERS, Judge, delivered the opinion of the court.

The word estate in a devise, will be descriptive of the subject of property, or the *quantum* of interest, according to the context. It will pass a fee whenever the intention of the

testator does not restrict it to import a description, rather than an interest.

In pursuing the intention, we must regard all parts of the will, and the relation of the devisees to the testator, and to each other, and that purpose is to be received, as intended by the testator, which will most effectually carry into execution all the different provisions of the will, and make them consistent with each other. These are rules of construction familiar in theory, but often found difficult in their practical application. To these rules another, of great importance, has been added by our act of assembly, 1825, *ch.* 119.

It had often occurred that testators in making a disposition of their property, without professional aid, omitted words of limitation, in cases where from the relation of the parties and the entire failure to pass away any reversionary interest in the property, it was more than probable, the omission was occasioned by want of information, and not by design, and yet the court, whose duty it is to construe, not to make wills, were confined to the language of the will, as the index of the testator's intention, and could not enlarge the interest of the devisee beyond a life estate. Such a case, perhaps, was that of *Beall vs. Holmes,* 6 *Har. and John.* 205.

The act of 1825, proposes a remedy for devisees in this condition. It assumes, that a testator may not know that terms of limitation are necessary, and directs, that if no words of perpetuity are added to the devise, it shall be intended that the whole estate and interest of the testator was designed to be passed; leaving that assumed intention, however, subject to be controlled by any evidence of a contrary intention, indicated by a devise over, by words of limitations, or otherwise. It reverses the principle of law, which considered an estate for life to pass by a general devise, without words of limitation, or other words clearly indicative of an intention to pass a larger estate, and says a larger estate shall pass by such general devise without words of limitation, unless the will contain a devise over, or manifest by some other words, an intention not to pass more than an estate for life.

We think, in this case, the will does furnish evidence that the testator intended to devise to *Henrietta Hammond* a less estate than the whole interest or estate, in fee simple, of which he was seized; and, therefore, that the act of 1825 cannot in any respect influence the case.

The devisee was the wife of the testator, entitled upon his death to a life estate, in one-third part of his real estate, and to an absolute interest in one-third of his personal estate, and we think the whole will manifests his knowledge of such her claims, and a design to insure to her the full enjoyment of her rights, and no more.

The whole of his real property, in the city of *Annapolis*, is devised to the two sons, *Henry* and *Nathan*, and the whole of the plantation in *Broad Neck*, is devised to the third son, with apt words to pass the fee.

These three devisees cannot take, according to the plain import of the devises to them, upon the hypothesis assumed by the appellee, that is to say, they cannot take a *fee simple* in the whole, if the widow has a fee simple in a third; but they may take, pursuant to the devise, upon the concession, that she has a dower interest; that is to say, the sons take a fee simple in the whole property devised to them, subject to her dower.

The residuary clause most impressively defines the sense in which the testator himself translated his former devise to his wife. It does not, in form, devise or bequeath to her, a proportion of any other property he had or might have, but it assumes the interest she had in it to be her third.

In common *parlance*, a wife's third in her deceased husband's estate, is the precise definition of dower; and the most familiar mode of recognizing the existing right of a widow to her dower is, to commence a devise with these expressions, *after my wife's thirds are taken out, I devise, &c.*

In this view of the residuary clause, it is not important, whether the testator had other real estate than that previously devised to his sons.

If he had, he clearly considered it incumbered with his

wife's dower, and designed it to pass by the residuary devise subject to that incumbrance. If he had none, it was no more than a prudent care to guard against the accident of omitting any portion, after an enumeration of all he could mention, but the same indication is furnished, that he considered it, should there be any subject thus to be encumbered, in virtue of his devise previously made.

By this construction we think every clause in the will is made to operate according to the plain obvious sense of the language of the testator; that consistency can be obtained, and a conflict avoided by no other construction, and that the intention of the testator, apparent upon the face of the will, requires it.

DECREE REVERSED.