BOWMAN, INDIVIDUALLY AND AS EXECUTOR *v.* WEER, INDIVIDUALLY AND AS TRUSTEE

[No. 121, October Term, 1953.]

*Decided April 26, 1954.*

· The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Clayton C. Carter* and *Richard T. Earle* for the appellant.

*L. Wethered Barroll* and *Lewin Wethered* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a portion of a decree of the Circuit Court for Queen Anne's County in Equity, construing the will of William Perkins, deceased.

On November 19, 1952, a bill of complaint was filed in which it was alleged that William Perkins, of Queen Anne's County, died leaving a last will and testament and that the Circuit Court for Queen Anne's County assumed jurisdiction of his estate and administered the same from the time of his death in 1906 to the death of M. Elizabeth Perkins, unmarried, on April 20, 1952. M. Elizabeth Perkins left a last will and testament in which she devised and bequeathed all her property unto John Bowman, who was appointed executor of her estate. At the time of the death of Miss Perkins certain real estate which had been devised under the will of William Perkins was not susceptible of partition or division in kind among the persons entitled thereto and it was necessary that the same be sold and the proceeds divided. The trustees of his estate, formerly appointed by the court, had in their hands personal property which should be distributed to the persons found to be entitled to the same. The bill also alleged the names of the grandchildren and great-grandchildren of Amelia Minta Copper, deceased. The bill asked that the court determine to whom the real estate and personal property was to be distributed and that the real estate be sold and the proceeds from the personalty and realty be distributed to the persons entitled thereto. After answer filed, testimony was taken before an examiner which showed that M. Elizabeth Perkins died April 20, 1952, without marrying; that the real estate was not susceptible of division; and the names of the grandchildren and great-grandchildren of Amelia Minta Copper, the daughters of Amelia Minta Copper being deceased.

The pertinent parts of the last will and testament of William Perkins follows: "I give and devise to my niece, Martha Elizabeth Perkins, all the Estate Real, Personal and Mixed, and that is the whole of my Estate, with the understanding that she does not marry. She shall not sell the Real Estate, if she marries, and there is offsprings of course, her assetts would go to her children. Should she remain single, at her death, all

the Property to be divided equalley between my nieces her Cousins the daughters of my sister, Amelia Minta Copper * * *."

The chancellor decreed in part "That the will of William Perkins devised his entire estate to his niece, Martha Elizabeth Perkins, for life, with the remainder to her children if she had married and had had children, or, if she remained single, which she did, then the remainder to the daughters of the testator's sister, Amelia Minta Copper, that the title to the real estate and such of the personal property as remains both pass to the daughters or the descendants of the daughters of Amelia Minta Copper." From that part of the decree the appellant appeals.

The appellant contends that the will of William Perkins vested a fee simple and absolute estate in all of his property, real, personal and mixed in the said M. Elizabeth Perkins.

The appellant argues that the words in the will "with the understanding that she does not marry" are a restraint on marriage and void and therefore there is no limitation over. Of course, a condition in general restraint of marriage, whether of a man or of a woman, as a general rule has been held in law as being contrary to public policy and void. *Miller, Construction of Wills,* Section 311, page 879. These words, however, do not appear to be in restraint of or on condition of marriage, but mean in expectation that she would not marry. These words are followed by others which indicate that she takes a life estate in any event, with remainder to her children if she has any. It was said in *Bostick v. Blades,* 59 Md. 231, at page 233: "* * * if the gift or devise be to a person *until* he or she shall marry, and upon such marriage then over, this is a good limitation, as distinguished from condition; as in such case there is nothing to carry the interest beyond the marriage. There can be no doubt, therefore, that marriage may be made the ground of a limitation ceasing or commencing; and this whether the devisee be man or woman, or other than

husband or wife. *Morley v. Rennoldson,* 2 Hare, 570; *Webb v. Grace,* 2 Phill. 701; *Arthur v. Cole,* 56 Md. 100." See also annotation, 122 A. L. R. 23. In *Arthur v. Cole, supra,* certain leasehold property was conveyed by a brother to two sisters "so long as they both shall remain unmarried, and from and after the marriage of either of them, then unto the one remaining unmarried * * *." In holding this clause was not a restraint against marriage, Judge Miller there said: "The purpose of the brother evidently was, not to restrain the marriage or promote the celibacy of his sisters, but to give to them a small property, as a home or support, until they should severally marry and have husbands to maintain them." See annotation 122 A. L. R. 9, 60. The appellant further points out that under the quoted words from the will in this paragraph, if the will be interpreted to vest only a life estate in M. Elizabeth Perkins and she had married and left no children, an intestacy would have been created. It is, of course, true that the law is favorable to the vesting of estates and against their destruction, and therefore a provision in a will is to be construed, if possible, not to create such a condition. However, here intestacy would be no reason to strike out the clauses creating the life estate. It was said in *Pattison v. Farley,* 130 Md. 408, at page 412: "While the construction we have placed upon this will will result in an intestacy at the death of the widow, Mrs. Pattison, yet it was clearly within the power of the testator to bequeath to his wife a life estate, and to refrain from making any disposition of the fee, leaving it to go to his heirs at law and distributees under the statute. 40 Cyc. 1624; *Keaney v. Keaney,* 72 Md. 41; *Bourke v. Boone,* 94 Md. 472; *Lyon v. Safe Deposit Co.,* 120 Md. 525." See *Carey v. Dykes,* 138 Md. 142.

The appellant further contends that if it is found that M. Elizabeth Perkins was devised a life estate, the devise over to her "children" if she marries and has "offsprings" would bring into operation the rule in Shelley's Case and vest an absolute interest in the said M. Elizabeth

Perkins. The rule in Shelley's Case is that when a person takes an estate of freehold, legally or equitably, under a deed, will or any other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate. These are words of limitation and not of purchase. *Fulton v. Harman,* 44 Md. 251, 263; *Travers v. Wallace,* 93 Md. 507, 512, 513; *Williams v. Armiger,* 129 Md. 222, 226; *Ringgold v. Carvel,* 196 Md. 262, 268. This rule, which was followed in this State for many years, was abolished by the Legislature, not retroactively, by the Laws of 1912, Chapter 144, Code 1951, Article 93, Section 363. The rule was therefore operative in 1906. The Courts in this State, however, have always endeavored to hold that the rule does not apply and have sought some "inconsistent provision or word which would exclude its application." The decisions of this Court require that we adopt the restrictive construction which gives effect to the natural and primary meaning of the words used, rather than an arbitrary meaning by an artifiicial rule of law. *Reilly v. Bristow,* 105 Md. 326, 332, 333. By the same rule the word "children" has been well recognized, unless it is clearly shown by the context to be otherwise intended, to signify immediate "offspring*s*" and is a word of purchase and not of limitation. *Stump v. Jordan,* 54 Md. 619; *Halstead v. Hall,* 60 Md. 209, 212; *Reilly v. Bristow, supra; Williams v. Armiger, supra,* 227; *Ringgold v. Carvel, supra,* 268. There is nothing here to show that the words "children" or "offspring*s*" were otherwise intended. In fact he here provides a remainder over, if she remained single. *Schlotzhauer v. Kummer,* 149 Md. 583. Here the words "children" and "offspring*s*" are specifically used synonymously and clearly mean immediate offspring and not the magic words

"heirs" or "heirs of her body" in their technical sense. *Hall v. Gradwohl,* 113 Md. 293, 299.

It is evident that this was a "homemade" will which makes it more imperative that the intention of the testator be sought from the four corners of the will. *Schlotzhauer v. Kummer, supra,* 586. Even if a testator in one part of his will gives an estate of inheritance and later in the same instrument shows that the devisee or legatee is to take a life interest only, the prior estate is so restricted. *Pattison v. Farley, supra,* 411; *Schlotzhauer v. Kummer, supra,* 587, 589; *Fersinger v. Martin,* 183 Md. 135, 139. There are no words in the devise and bequest to M. Elizabeth Perkins such as "absolutely" or "in fee simple" to indicate that the testator intended such an estate. In fact the words that "She shall not sell" and the remainder over if "she remain single" are indications that a life estate to her was intended. We see nothing in the will here to indicate that the testator intended M. Elizabeth Perkins to receive an absolute and fee simple estate. He meant to leave her only a life estate. She having remained single ,the remainder over to the daughters or the descendants of the daughters of Amelia Minta Copper became effective as found by the chancellor. The decree will be affirmed.

*Decree affirmed, with costs.*