# LILLIE E. CAREY et al.

## vs.

# BERTIE E. DYKES.

### *Construction of Will—Repugnant Clauses—Intention.*

A will in terms giving testator's personal estate to his wife for life or during her widowhood, and at her death or marriage all his estate both real and personal to his niece, and finally giving to his wife all his real estate, *held* to give to the wife the real estate for life only, the final clause being evidently intended merely to correct his previous omission to give it to his wife for life.　　　　　　　　　　　　　　　　p. 144

The rule that as between two repugnant clauses in a will, the latter one will be preferred, is subject to the paramount rule that the intention of the testator as gathered from the whole will is to prevail.　　　　　　　　　　　　　　　pp. 144, 145

*Decided March 2nd, 1921.*

Appeal from the Circuit Court for Wicomico County, In Equity (BAILEY, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*F. Grant Goslee,* submitting the cause on brief, for the appellants.

*James E. Ellegood,* for the appellee.

OFFUTT, J., delivered the opinion of the court.

William P. Causey, a resident of Wicomico County, Maryland, died in March, 1905, leaving a last will, duly executed to pass real and personal property, dated October 22, 1902, which contains the following provision for the disposition of his property:

"I give and bequeath to my wife, Emma V. Causey, all my personal estate her lifetime or widowhood, at

her death or marriage I bequeath to my niece, Bertie E. Dykes, all my estate, both real and personal, by her paying James C. Causey, if he is living, if he should not be living, to his 3 oldest daughters, Lillie, Amy and Carrie, one hundred dollars, provided the estate amounts to five hundred dollars. If the estate does not amount to five hundred dollars, said Bertie shall pay one-fifth of what she gets. I also bequeath to my wife, Emma V. Causey, all my real estate, if any there be, at my death, and lastly I do hereby constitute and appoint my dear wife, Emma V. Causey, to be sole executrix of this my last will and testament," etc.

The testator, who died without issue, was survived by Emma V. Causey, his widow, and she died in 1917, leaving to survive her as her heirs at law and next of kin certain collateral relatives. The will from which we have quoted was in due course admitted to probate in the Orphans' Court of Wicomico County and, upon the death of Emma V. Causey, Bertie E. Dykes, the devisee named therein, took possession of the property thereby devised and paid the legacies charged upon the devises and bequests made to her under the will. Some time after that she attempted to sell the real estate, but the prospective purchaser declined to consummate the purchase on the ground that her title to the property was in doubt, since it was uncertain whether, under the will of William P. Causey, the title to his real estate passed to Emma V. Causey absolutely or to Emma V. Causey for her lifetime only and at her death to Bertie E. Dykes in fee. Bertie E. Dykes, for the purpose of procuring a construction of the will and of removing the doubt in regard to her title, brought this suit against the heirs at law of Emma V. Causey. The case coming on in due course for a hearing, and having been submitted for decree, the court decreed that, by the true construction of the will of William P. Causey, his real estate was devised in fee simple to Bertie E. Dykes, the appellee, subject to the life estate of Emma V. Causey, and

144 CAREY vs. DYKES.

to the payment of certain legacies charged against it, and it is from that decree that this appeal is taken.

The only question before us therefore is whether William P. Causey meant, by the language employed in his last will, to devise his real estate to his wife Emma V. Causey for her lifetime only and at her death to her niece Bertie E. Dykes in fee, or whether he meant to devise it to his wife absolutely, and in our opinion this question is quite free from any serious difficulty.

Causey did not have very much property. The only persons who appeared to be immediately dependent upon him were his wife and his wife's niece, Bertie E. Dykes, who was for many years a member of his household. He had other relatives whom he wished to remember in a small way in the disposition of his property, but his principal desire seems to have been to provide as well as he could for his wife and the niece to whom we have referred. These were the things he intended to do when his last will was prepared. An examination of the will shows that, after giving to his wife all his "personal estate for her lifetime or widowhood," at "her death or marriage" he gave to Bertie E. Dykes all his "estate both real and personal" and charged the gift with the payment of one hundred dollars to persons designated in the will, provided the *estate* amounted to five hundred dollars, but if the estate amounted to less than five hundred dollars she was to give the persons named one-fifth of what she actually received under the will. Later, in the same item, the testator used this expression: "I also bequeath to my wife, Emma V. Causey, all my real estate, if there be any at my death." The appellants' contention is that these two expressions are so inconsistent that they cannot stand together, and that therefore by a well known rule of construction the one last used must prevail. That rule, however, can only be invoked to aid and never to defeat the real intention of the testator and where that intention can be definitely learned it must prevail. In this case the testator's intention is, we think, reasonably clear. The will was obviously drawn by an

unskilled person in accordance with some general form. The testator, to carry out his intentions with regard to his wife and niece, intended to give to his wife all his property for her life so long as she remained unmarried, and at her death or marriage he wanted that same property to go to his wife's niece, Bertie E. Dykes. At the beginning of the clause to which reference has been made, he only gave to his wife his personal property. This was a manifest oversight, for in the same sentence he gave all his "estate," both real and personal, to the niece at the death or marriage of his wife and when he did that he evidently did not know that he had not given his wife a life estate in his real as well as in his personal property, and when he had discovered that omission he endeavored to correct it by adding these words: "I also bequeath to my wife Emma V. Causey all my real estate," intending that clause to be taken in connection with and as completing the first expression, which otherwise would have been incomplete. That such was the testator's intention we think is apparent, not only for the reason stated, but for the further reason that the only bequests he made other than those to his wife and niece were made charges on his "estate" which term includes his real and personal property devised to his wife's niece. Such being the intention of the testator, in our opinion, effect must be given to it. The cardinal and controlling rule in the construction of wills is that effect must be given to such an intention. This rule is very clearly stated in *Morrall* v. *Sutton,* 1 Phil. Ch. 543, in which Mr. JUSTICE COLERIDGE, in discussing that very point in the course of an opinion in which he differed from his associates as to the disposition of the matter before them, said: "I think it may be taken as clearly established that this rule (that the latter clause or phrase is to be preferred and the former rejected) must not be acted on so as to clash with another paramount rule, which is, that before all things we must look for the intention of the testator as we find it expressed and clearly implied in the general tenor of the will; and when we have found that on evidence satisfactory in kind

and degree, to that we must sacrifice the inconsistent clause or words, whether standing first or last, indifferently and this rests upon good reason; for although when there are repugnant dispositions and nothing leads clearly to a preference of one to the rejection of the other, convenience is strongly in favor of some rule however arbitrary, yet the foundation of this rule, as of every other established for the interpretation of wills, obviously is that it was supposed to be the safest guide under the circumstances to the last intention of the testator. To consider it merely arbitrary would be unnecessarily to suppose an anomaly in the canons by which wills are interpreted. To make it a rule of evidence is to make it harmonize in principle with them." See also 2 *Beale, Cardinal Rules of Legal Interpretation,* 561. Nor are the decisions of this Court cited by the appellant at variance with these views. The rule is undoubtedly, as stated by this Court in such cases as *Grieves* v. *Grieves,* 132 Md. 308; *Pattison* v. *Farley,* 130 Md. 411, and *Iglehart* v. *Kirwan,* 10 Md. 559, that where repugnant clauses in a will cannot stand together the one "last said" shall prevail, but this rule is always subject to and subordinate to another rule of greater and paramount force, and that is, that "the intention of the testator must be gathered from the whole will; from a consideration of all the provisions contained in it without regard to the order in which those provisions occur." *Smithers* v. *Hooper,* 23 Md. 285. And when once ascertained the testator's intention must be given effect.

For the reasons we have given we concur with the learned court below in the opinion that under the will of William P. Causey, Bertie E. Dykes at the death of Emma V. Causey took an absolute fee simple estate in the real estate of which William P. Causey died seised, subject howevr to the payment of certain pecuniary legacies charged thereon under the terms of his last will and testament, and the decree appealed from will therefore be affirmed.

*Decree affirmed, with costs to the appellee.*